Next case for argument is Murphy Company v. Donald Trump. Julie Wise v. Murphy Timber Investments, LLC Murphy Company asks the Court to reverse the District Court's decision which upheld the expansion of the Cascade-Siskiyou National Monument effected by Proclamation 9564. Murphy Company seeks reversal because the monument expansion was ultraviaries to the extent it included ONC Act timberlands, and it's undisputed that it did. Including ONC Act timberlands in the monument was ultraviaries because 80 years prior, Congress had reserved those lands for the dominant use of sustained yield timber production. As a result, they were not available for the irreconcilable mandate of preservation under the Antiquities Act. Before turning to the merits of our appeal, I first want to assure the Court that you have jurisdiction to hear this appeal. The government has challenged that. We start from the bedrock principle that courts ordinarily presume that Congress intends the executive to obey statutory commands and for courts to grant relief when that congressional intent is a backdrop. The government raises two particular points. It asks first, where is the waiver of sovereign immunity? And then, what is the cause of action? Your Honors, the waiver of sovereign immunity comes from Larson. In Larson, the Court held, the Supreme Court in 1949, that if the federal actor whose conduct is challenged allegedly acted in excess of his legal authority, then sovereign immunity was never a suit because the actor didn't have the authority to so act in the first place, and therefore, sovereign immunity never attached. Now, we've, of course, seen cases involving executive branch officials under Larson, but do you have any case where any federal court of appeals has determined whether the judiciary may review a presidential act by the president that was deemed or brought under the rubric of ultra-virus? Yes, Your Honor. This court addressed that in Hawaii versus Trump. I was going to discuss that more in the context of the cause of action, but in Hawaii versus Trump, the allegation was that the court could not review an immigration proclamation issued by the president. The court said, this is not going to evade judicial review. The absolutely. And, Your Honor, it was... Let me just kind of step back to kind of, with a little more precision, because in the Supreme Court, assumed without deciding. So that's a little bit different than deciding. Do we have any case where the court has decided? Because in looking at Supreme Court cases, I see a number of cases where the Supreme Court must have decided, wow, this is a really hard question, so we'll go to the merits. Do we have any case where the Supreme Court says there's jurisdiction or even a federal court of appeals said that? Well, Your Honor, first, on Hawaii versus Trump, when the court said, we're going to assume without deciding that we have jurisdiction and proceed to the merits, the court said a little bit more than that. The court actually said at page 2407 of the opinion that it was appropriate to do so because no provision of the statute expressly stripped the court of jurisdiction. So this court likewise could assume without deciding that jurisdiction exists. So I wanted to move to your cause of action. So let's assume jurisdiction exists, but what about the argument that your adversary makes that, well, one statute gives the president more or less unfettered authority with respect to the creation of national monuments and the expansion of national monuments. A different statute doesn't restrict the authority of the president. It restricts the authority of the Secretary of Interior. And why couldn't, therefore, it be said Congress thought, okay, when it comes to the president, we'll give him unfettered authority, but when it comes to a lesser person such as the Secretary of Interior, we're going to put some restraints on what can he do, in which case there would be no inconsistency. Your Honor, first of all, the ONC Act doesn't, it actually governs the management of these lands. So we're talking about the federal land management. But I think more importantly, the district court's decision, finding that distinction between the Antiquities Act and the ONC Act, it suggests that the executive can ignore federal statutes that do not explicitly authorize or prohibit presidential conduct. And that really is repugnant to the bedrock principle of separation of powers. One question I have is, of course, we have the Antiquities Act, which is, you know, formed in antiquity and prior to the ONC Act. There's nothing in the ONC Act that somehow implicates the Antiquities Act. So I am having some trouble understanding why they can't be reconciled. Your Honor, the mandates governing the land management are completely irreconcilable. So the Antiquities Act and the proclamation here, 9564, that mandates that the land be preserved. No sustained yield timber production. No calculation of a sustained yield for the lands. The ONC Act, in contrast, 80 years before the proclamation came along, said these lands shall be managed for sustained yield production. A sustained yield shall be calculated. And once it's been calculated for each sustained yield unit, the government will offer that timber for sale. There simply is no way to reconcile those competing demands. These timber lands now are subject to sustained yield timber production and no sustained yield timber production. Those are wholly incompatible. The courts reconcile statutes whenever they can, absolutely. But we also have in this situation a statute that is later in time and much more specific. The ONC Act came along in 1937 after the Antiquities Act. And we have, the Supreme Court has taught us, for example, in Crawford Fitting 482 U.S. 437, citing Radsnauer, that courts do their best to reconcile competing statutes. But they have to keep in mind that specific statutes are not controlled by general ones. The best way to think about this is when the Antiquities Act was promulgated, the executive had authority to include these lands in a monument. But then in 1937 when the ONC Act was promulgated by Congress, that went away because of these competing irreconcilable mandates. That is the crux of this case, Your Honor. But when you say it went away, I mean, the directive that some land be designated or available for logging is not inconsistent with some of the land not being available for logging, correct? Under the ONC Act, Your Honor? Under the ONC Act, all ONC Act timberlands are governed by sustained yield timber production. Your argument is that the numerator cannot be reduced, that the acreage available for timber production cannot be lowered by 16,000 acres of timberland that is included in the monument and no longer available for harvesting under the ONC Act. That's right, Your Honor. You're saying that two million acres under ONC, that's a fixed number and must be available for logging? Or is it subject to the Interior Department's discretion as to how to manage the overall lands? Two answers, Your Honor. First, only the suitable lands are the ones that will be managed for timber production. So not all ONC Act lands are suitable for timber production. But of those that are suitable, yes, it needs to be available for timber production. And there's no dispute here that the monument took away some timberlands that were otherwise included. I call it the numerator, but essentially the total number of harvestable land. That's correct. Within the two million acres. There is no dispute, Your Honor. There were about 40,000 acres of ONC Act lands put into the monument. About 35,000 of those, or 34,000 of those, were suitable timberlands. And then even another subset, we know that at least 16,000 of those acres were actually in the so-called harvest land base under the Governing Resource Management Plan. And the harvest land base is where BLM conducts sustained yield timber production. So we know that these were suitable timberlands and they were taken out of suitable timberland status. They may still be called ONC Act lands, but they are now off limits to timber production. And we know this because the declaration of Ms. Hanley from the BLM says once those lands were added to the monument, we stopped planning for sustained yield timber production. Her declaration is in the excerpts of the record. It starts at page 11. Are there any other cases where the President acted under the Antiquities Act and removed land that was otherwise available, let's say for mineral production, that was protected by some other statute than the ONC Act? Your Honor, I am not aware of a case that presents the irreconcilable conflict as clearly as this. I'm not aware of that. The President certainly can, you know, they could rescind a monument, excuse me, they can reduce the size of a monument. No one's ever tried to rescind one. Clearly, when a monument is created, somebody's ox is going to be gored. I mean, it may be created on federal land, but it may also take land away from private landowners and then presumably I guess what the government declares eminent domain or something and compensates the landowner for the taking. I think the big difference here, Your Honor, why this case is different is because the land management statutes are simply multiple use. So Federal Land Management and Policy Act is multiple use management, for example. But this is dominant use. And I'll take you to this court's Headwaters decision back in 1990. My colleague Mike Haglund actually tried that case. So in Headwaters, this court said this is a timber production dominant use statute and it disallows conflicting uses. That makes this case different, Your Honors. In Headwaters, the plaintiffs were contending that the ONC Act was a multiple use management statute with all uses on equal footing. And the Ninth Circuit said, no, that's not right. Headwaters said, that's untenable. You cannot set aside any of these lands for conservation purposes. Well, of course, Headwaters was looking at a little bit different situation. And what they ultimately did, as I read it, is they, of course, affirmed BLM's discretion to manage it in this case for logging purposes. I think that where you don't have the Antiquities Act, which you didn't in the Headwaters case, you have a different situation. Your Honor, BLM does not enjoy this unfettered discretion to manage these lands. What it does enjoy, the discretion, comes in the offering of timber sales. Where is the timber sale going to be offered? What is the rotation age? Things of that nature. What are we going to price it at? That's the type of discretion that the court has. And, in fact, I think it was clear in the briefing that these cases are also preceding the D.C. Circuit. And in the District Court, the District Court judge in D.C. concluded that ONC Act timber lands cannot be put in reserves that are off limits to timber production. And he did that in the context of understanding that the ESA was at issue as well. That's another difference with Headwaters, Your Honor. ESA wasn't pled in that case. What's the status of the appeal to the D.C. Circuit? The government's reply brief is due in about three weeks, I believe. And the full briefing, it's a joint appendix court. So the full briefing will be submitted on October 6. So we're close. One other thing I'm trying to understand is the parameters of challenging a Presidential Act ultra-virus. Because, you know, we start with the principle, and we've seen this in Supreme Court cases, that generally these Presidential Acts ordinarily cannot be challenged. Couldn't every Presidential Act basically be claimed to be ultra-virus, therefore invoking jurisdiction and always getting to the merits? I mean, where is the kind of cabining effect? And I'm sure you've thought about that, because otherwise we would basically be pulling the rug under, you know, 100 years of principles about executive authority. Yes, Your Honor. This Court's E.V. v. Robinson case is really instructive on that front. Judge Pez authored that decision. And it's helpful because it talks about Larson. Now, Larson, recall, was predated the 1976, I believe, amendments to the APA where there was an express waiver of sovereign immunity added for agencies. And what Larson, what E.V. v. Robinson said in exculpating Larson was that where that APA section 702 waiver of sovereign immunity doesn't apply, Larson, the framework in Larson still allows you to have that waiver of sovereign immunity. So it's not so much a waiver. It never attached because you were doing something ultra-virus. To your point, everything is ultra-virus if you don't like it. No, I understand your point, Your Honor. And Robinson talks about that as well. And it says there is a line between ultra-virus and a mistake of factor law. But it says we're not going to define that line because every case is different. And determining what is ultra-virus can be a tough question. Now, in E.V. v. Robinson, it was not a tough question because the issue there was a military judge making an allegedly wrong evidentiary ruling. And the Court said, we get to make wrong evidentiary rulings. That doesn't mean we're doing ultra-virus acts. However, where you have a situation like this, where Congress has explicitly exercised its plenary authority over public lands and said these lands are for the dominant use of sustained yield timber production. And then the Antiquities Act is used to promulgate a proclamation to simply bolster protections in an existing monument. And it conflicts irreconcilably with what those lands have already been set aside for. That's a different situation. That's ultra-virus. Going back to Headwaters, do I understand your argument to be, in that case, we were dealing with lands that had been designated for multiple use by the Forest Service or the BLM and it was within the discretion of the agency as to what particular use would be permitted? No. Headwaters, courts have gotten Headwaters a little bit confused. And the reason is, the lands at issue in Headwaters actually were comprised of ONC Act timber lands, subject to dominant use sustained yield timber production. And they also included public domain lands. Public domain lands are subject to the Federal Land Management and Policy Act and multiple use management. So, for example, in the district court's Lyons decision that was upheld on appeal by this court in Mosley, there, Lyons actually suggested that there was multiple use management going on on ONC Act lands, but it was not. It was on the public domain lands which are subject to FLPMA, the Federal Land Policy and Management Act. Your Honors, I will turn then to some of the specific bases for reversal. We've already talked about, we've already talked about... Just reminding you of your time. Yes, Your Honor. I think I will... If you wanted to save any time for rebuttal, that's your choice. This has been a very engaging conversation. I think I'll save the remainder of my time for rebuttal and just let you know now that I'm going to ask you to reverse the district court's decision. We had that impression. Yes. Thank you, Counsel. Good morning. May it please the Court. Robert Lundman representing the President and the other federal parties. I'm joined at the Council table by Kristen Boyles, who represents the intervener Soda Mountain, but she has ceded her time to me, so I plan to use the whole 20 minutes here. I'll start out on reviewability. And, you know, as the Court noted, the Supreme Court can ask a question without deciding it. We think here, when we're talking about non-statutory reviews, so the APA doesn't apply, the Antiquities Act doesn't provide a right of review against the President, that the real right of review here should be provided by Congress in the first instance, and it's just missing. Counsel, let me ask you a question. Suppose that the President had decided, in his wisdom, that the entire 2.4 million acres would be included within the monument. Could he do that in light of the existence of the ONC Act? I think that would be a real problem. I mean, it would eventually, that would be an irreconcilable conflict, I think. It seems to me that would be the case. Then it becomes a question of line drawing, does it not? Right. And I think the line, it's this action here by the President is clearly on the permissible side of the line. The ONC Act doesn't mandate- Well, President Clinton had initially created the monument, and then President Obama, more than what, doubled it? Approximately doubled it. It's about 100,000 acres now, he added 48,000 acres. So then the question becomes, how far does the President have to go before the government would concede that the President has acted ultra viris, and there is an irreconcilable conflict with the ONC Act, and therefore, federal courts have jurisdiction to review the action of the executive? I'm not sure how far, but we're talking a 48,000 acre expansion, 40,000 acres are ONC lands, against a 2.4 million acre ONC land base. So this is a- Supposing Congress had said in the Antiquities Act, we give the President unfettered discretion to make these monuments as big or little as he wants, because we think only he can see the broad national picture. And then in a subsequent statute, they say now, the Secretary of Interior, it's a different question, he's got a narrower view, he doesn't possess the of the President of the United States. So we're saying he can't do that. He's got a, he's subject to certain limitations. If that were the case, there's a hypothetical, obviously, couldn't the President say, I'll take the whole area and make it a national monument? I think that's possible in the hypothetical you gave. I think here, the ONC Act has a very defined area, 2.4 million acres. On that acre, it provides for certain things. It provides for classification as timber lands or not. That's a discretionary decision. And then a further discretionary decision, sustained yield management for the primary purpose of timber production, but not the only purpose. There are secondary purposes that follow in the statute. But you're not disputing that the expansion of the monument reduced the total acreage available for timber production. By 16,000 acres. By 16,000 acres. That's right. That's consistent with how Interior, so let's assume away the President versus Interior problem for a second. We think that's critical here. We think that sale versus Haitian centers explains why that matters. But let's assume for a second we're on the same footing. Interior for 30 plus years has been reserving ONC lands for other purposes under the Endangered Species Act, late successional reserves to protect the Northern Spotted Owl, riparian reserves to protect Clean Water Act interests. And those reserves are much bigger than the ones at issue here. They're at issue in the D.C. Circuit, but they're not issue at this case. So we have 30 plus years of Interior reserving. If you also go back to the beginning of the ONC Act, the Secretary's letter transmitting the bill to Congress says reserves are okay and that this Act is discretionary. It provides for discretionary management by the Secretary. So we have that at the outset of the Act. Then a year later, Interior's first regulations, 1938 regulations, we cite these in our brief, also authorize reserves of merchantable timber. So we have a consistent approach here with some deviation that I'm sure opposing counsel mentioned. But the last 30 years we've had reserves from the Northwest Forest Plan that are critical to the operating of this whole system. So could the Secretary say, in the exercise of my discretion, I am reclassifying the 16,000 acres. I now declare it is no longer suitable for timber production. Therefore, there's no conflict. Would that be reviewable? If the Secretary did that? Yes. Sure. If the Secretary took a final agency action reclassifying lands under the ONC Act, this court would be able to review that action. And that's of course one of the differences here is we're talking about a presidential proclamation. Right. We're not talking about the Secretary of Interior or the head of BLM doing something, correct? Exactly. So here we have a presidential proclamation. The review they're seeking here and the relief they're seeking here is aimed at that proclamation by the President. It's not seeking to set aside a secretary action or a department action pursuant to the APA. And that review is limited. It's limited at most. The outer bounds is ultraviarious review. It's also constitutional review, but they don't have a constitutional claim. And here, if you look whether this is an ultraviarious question or discretionary question, you look at the ONC Act and this court said in Portland Audubon and then affirming the Seattle Audubon District Court decision that there's discretion in the ONC Act. So if you connect those doubts, the review here is going to be for abuse of discretion under the ONC Act. And that means the review is not available under Dalton. The Supreme Court explained that very clearly. And under Franklin as well, the Supreme Court explained that. Let me just ask you, assume we have a congressional action that says you must lease waters off the coast of California in this area for wind power. And then, the President comes in a little later and says, you know, I don't like that. And so I'm going to actually create a national monument out of these waters off of the coast of California. Would that national monument designation be legal? Well, that would be an ultraviarious action. It sounds to me like that you've identified an irreconcilable conflict that would be ultraviarious by the President. Under the D.C. Circuit's case law and this court's case law that was vacated by this, reversed by the Supreme Court, there is ultraviarious review of presidential action available. We don't think that's necessarily right. We think Congress here could, you know, has made a decision to grant specific authorities to the President under the Antiquities Act. And Congress knows how to limit those authorities. In the Antiquities Act, Section D says no presidential, I'm paraphrasing, but no presidential proclamations creating monuments in Wyoming. So Congress knows how to rein the President in when the President has... That's my home state. Did you pick that by accident? I don't think it was an accident. I think it was an example of Congress's continued oversight here, which does lead to one of our arguments about that Congress knows what's going on here. It's an example of Congress's recognition that Wyoming is perfect as it is. That might be, yes. Counsel, then what is the purpose of the non-abstante clause? All acts or parts of acts in conflict with this act are hereby repealed to the extent necessary to give full force and effect to this act. Well, I think the non-abstante clause doesn't change the fundamental question, which the there's a conflict. It applies if there's a conflict. And the Supreme Court has said for there to be a conflict, it has to be irreconcilable. And the courts have a duty to try to resolve  So if we go back to my hypothetical where the President took the entire landmass under the otherwise protected by the ONC Act, then you would concede that that clause would kick in to prevent the President from doing that? I think, you know, I think that looks like an irreconcilable conflict to me, that the ONC Act has been rendered... It is as if the President rather than the Secretary determined that these 16,000 acres are no longer suitable for timber production because I want them for my monument. And we think the Secretary could do that under the consistent with the ONC Act. But you told me earlier, we could review the decision by the Secretary. So is the distinction here? Well, it's the President that did it, not just some lowly cabinet level official. As to reviewability, I'm saying if the Secretary did that outside the Antiquities Act, the Secretary doesn't have any Antiquities Act authority. If the Secretary just said, I'm creating a new reserve on ONC lands, it is 16,000 acres, here's the reserve, final agency action, someone has standing, then that's reviewable under the APA. That's a final agency action that's reviewable. But that's not. It's different when the President does it. And Franklin and Dalton make that very clear. So the distinction is who is the actor? For reviewability, that's the critical distinction. It's who is the actor? Clearly, the actor here is the President. The relief is aimed at the President. The President took the action here. The proclamation is signed by the President. The Antiquities Act grants authority to the President. This makes this case much more like sale versus Haitian Senator's Council, where the Supreme Court explained, okay, some acts in the statute are assigned to the Attorney General. Some are assigned to the President. We're not going to equate those two. And so here we've got the same situation with the Antiquities Act assigning authority to the President. Interior is assigned responsibility for managing the ONC lands. And we're not going to say that you shouldn't reach the conclusion there's a conflict when different federal actors have different authorities and are acting pursuant to them. No argument here that... You'd have me were it not for the Congressional Declaration that we've got to protect timber communities and provide them with a sustained yield so that they can get some revenue from all this land that is otherwise under the ownership or control of the federal government. Well, I think the question is, what does sustained yield mean in this statute? We know that it means that the agency has to determine on an annual basis how many million board feet can be harvested under a sustained yield management plan. And the President has removed 16,000 acres from the amount of land that's otherwise available to fund these communities. And that doesn't violate the sustained yield provision of the ONC Act. But doesn't that conflict with the ONC Act? That's the problem I'm having. I don't think it does because it provides for sustained yield across the ONC Act lands. And so here, both Interior and the President with this action have realized that the best approach here, one that's not inconsistent with any statutory language, is to have some reserves for Endangered Species Act purposes, for riparian purposes, and here for an Antiquities Act purpose. But wasn't that done when President Clinton initially established the landmark? That was, and President Obama then expanded it for similar reasons. So he decided that environmental and wildlife concerns were more important than the dominant use under the ONC Act, which is sustained yield timber production. He decided that there should be a reserve of lands. A greater reserve. Well, you know, slightly different sizes, but President Clinton's reserve and the expansion by President Obama, where sustained yield management is not going to be applied to those acres. That doesn't mean sustained yield management's not being applied to the ONC Act acres. BLM is still reaching the ASQ, the allowable sale quantity. It appears that the total volume of timber has, sales have been significantly reduced from historical. Well, I think that's a really interesting point. We had historically, you know, the basic trend of this, there's more details in our brief, was approaching 500 million acres, 500 million board feet a year, up to close to a billion. And then when the listing of the, of the owl, and it fell, fell off entirely down to about 16 million. It's up to more than 200 million square board feet a year now. And so there's been a rebound. This system is working, a system with reserves for Endangered Species Act purposes, for riparian purposes, and this much smaller monument area. Plaintiffs only identify one timber sale site. Your argument is 16,000 is sort of a de minimis reduction given the total acreage that's otherwise available for timber production. We didn't say de minimis, but what it is, is it's not inconsistent with the framework of the ONC Act. I mean, I guess, we keep talking about the numbers, but it seems to me if you have these, you know, millions of acres subject to the Act, I take it your position is that the President's proclamation under the Antiquities Act is not consistent with being able to manage overall the ONC lands. Is that right? Right. And the, right. The mandates, the Act requires Interior to manage the ONC lands, but it does so in a discretionary and flexible way. So the Presidential action here is not inconsistent with that flexible requirement. And this Court has said it's full of, this requirement is discretionary. It's just not, it's simply not a mechanical system. And just to do a little more statutory history, before the ONC Act, it was a mechanical system. It said Interior, liquidate the timber. And that's, we're not in that system anymore. We're in a system that is different, more flexible, more discretionary. And so the President's action is consistent with that, even assuming it's reviewable and even assuming you look beyond the difference here between Antiquities Act, applying to the President and the Secretary being in charge of this management system under the ONC Act. Would you just address the Headwaters case? Sure. Which Council brought up. Sure. I think Headwaters is very different from the situation here. It was brought by environmental groups challenging a timber sale. And they said, the ONC Act mandates multiple use analysis. So this timber sale is improper because you're relying on the ONC Act to justify it. And this Court said, no, that's not what the ONC Act says. It's a primary use statute. And so the ONC Act, standing alone, doesn't bar a timber sale in ONC lands because in fact it's facilitating and encouraging those timber sales. That's not the situation we have here. There's no discussion of the Antiquities Act or the ESA or NEPA. So there's no issue in that case about reconciling statutory demands. And if you look at the Supreme Court's analysis in Epic Systems, which is a recent decision on how you reconcile statutory demands, the courts have a duty to try to do so. And here it's readily done by saying Antiquities Act applies to the President and authorizes this action. The ONC Act is discretionary and flexible. It doesn't take away the President's authority here. And you can reconcile the acts on that basis. What about the amendment of the Antiquities Act, which of course is before this particular expansion designation? Does that have any impact? I'm not sure which amendment that we're talking about. I thought there were some amendments to the Antiquities Act. It was recodified to a different location, but I don't think the language in one and two were changed at all. And so, you know, it's still applied to the same thing, still provide for reserving land. It still said smallest area compatible, not an argument that the plaintiff has made here, has come up in other Antiquities Act cases that the D.C. Circuit has addressed. And so I don't think there's been any change in substance that would affect this court's analysis. I think I've talked a little bit about the kind of the history here after the Act and the implementation of the ONC Act, so I won't go back to that. I will just circle back one more time to the reviewability point. If the court is inclined to follow its reasoning, which has been set, you know, reversed on ultravirus review, I still think that because the fundamental requirements of the ONC Act are discretionary, that that doesn't lead to a reviewability of this presidential action, because the limits they're pointing to are not strict mandatory limits, but rather a flexible ONC Act management system. And so I think that is a different situation than where the D.C. Circuit has indicated that a review might be available. Unless the court has... I do have one other question. That has to do with the officials at the Department of Interior and whether there would be jurisdiction for declaratory judgment or otherwise vis-a-vis the department officials. There's not in this case. That is sometimes a way around this presidential reviewability issue. They haven't identified any final agency action by Interior here, so there's no APA final agency action for review. Second, there's a provision that we cited that says Interior cannot undo a presidential monument decision, and so that again points the arrow right back to the president. And I think the Supreme Court's Dalton case is instructive on this. If at the end of the day they're really focused on what the president has done, and that's what they're focused on here, they're saying the proclamation was ultra-virus, then the question is presidential review. It's not... You can't do an end-run about it by just getting a declaration against the agency. You need an agency action to review instead, and there is none here. There is in the D.C. Circuit. That case involves both the monument expansion that's at issue here and the plans. And the plans present the question of ONC Act, what the meaning of the ONC Act is, and those are being reviewed pursuant to the APA in the D.C. Circuit case. Those are the forest management plans. Those are the resource management plans. We actually have an action by the agency. Right. That plaintiffs in that case are arguing conflict with the ONC Act. So that's Judge Leon's case. That's Judge Leon's case. Okay. And we've appealed those, and those are, as opposing counsel said, are being briefed. All right. Thank you. All right. Thank you very much. Thank you. We ask that the Court affirm. Three points on rebuttal, Your Honors, with a few subsets. First, there is no de minimis exception to the ONC Act. Whether it's 16,000 acres in the Harvest Land Base that were put into the monument or it's the entire 40,000 acres in the monument, there is no de minimis exception. On the issue of reserves, the government talked about the ONC Act actually envisioned reserves. I would refer you to the legislative history that is in the record. Nothing suggests a grant of discretionary authority so broad that the government can put aside vast swaths of timber lands in reserves from timber cutting. Back in 1937, prior to the Act being promulgated, I think it was in July and the Act was passed in August, the Acting Secretary observed that sustained yield timber production would make possible some reservations. What he said was cut over land, an acreage of seed trees, for example, when needed to aid in reforestation, things like that. But then he said, this is a new management strategy. It's a long-range program of planning, having for its object a well-regulated system of cutting. That's at ER 68. That was to replace clear-cutting and basically just harvesting every tree they could get a saw to without any regard to whether or not there would be second growth in the years ahead to continue a revenue stream to these timber communities that are being funded through the sale of this timber. But the point is that the reserves that were being spoken about in 1937 prior to the passage of the Act, they were not large swaths. They were small areas like seed trees, Your Honor, that you needed to have reforestation, things of that nature. And when you look at those first, in 1938, the first regulations that were promulgated for timber sales on the ONC Act lands, when the, even there, if you look at three-fed reg 1796, there the record says care had to be taken. If you're going to put aside any of those small reserves, to avoid unnecessary interference with the normal and proper conduct of logging operations on adjacent lands. It did not envision the types of setting aside large swaths of timber lands at issue here. On reviewability, Your Honors, I will make two quick points. One, we can go back as early as the Leadom versus Kine decision. In Leadom versus Kine, the Supreme Court was faced with an ultra-virus action involving certification of a collective bargaining unit. It was ultra-virus, but there was a ban on review. There was case law that said you can't review a certification of a collective bargaining unit. So the Supreme Court was struggling with, do we get to review ultra-virus action? And it said, of course we do. We have to be able to review conduct that is deemed ultra-virus. And if we go with the government's argument in this case, allowing the President to bypass statutory limitations on governmental authority, particularly, Your Honors, in the area of public lands where Congress has plenary authority, that would be highly repugnant to the rule of law. So in closing, I would simply remind you that there are limits on executive authority. This Court knows that. Courts know that. And when the executive acts in a manner that is ultra-virus, it is the Court's responsibility and privilege to enforce those restrictions. This is one of those cases. And we simply ask you to reverse the District Court's decision, that expansion of the monument that bolstered the original monument, reverse the District Court's decision and conclude that ONC Act timber lands were not available for inclusion in the monument expansion because of the ONC Act's promulgation 30 years prior because of that irreconcilable conflict. Thank you. Thank you. I'd like to thank both counsel for your argument this morning, also for the very helpful briefing submitted by both parties. The case just argued is Murphy v. Trump, or perhaps now Biden, and that case is submitted.
judges: McKEOWN, TALLMAN, Rakoff